DOANE COLLEGE, A CORPORATION, APPELLANT AND CROSS-APPELLEE, V. COUNTY OF SALINE, APPELLEE AND CROSS-APPELLANT.

112 N. W. 2d 248

Filed December 15, 1961. No. 35000.

*Marti, O'Gara, Dalton & Sheldon* and *Gerald J. Hall-stead*, for appellant.

*Steinacher & Vosoba*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an appeal from the district court for Saline County, Nebraska, in a proceeding which originated before the county board of equalization of that county. The appeal involves a determination as to whether certain property owned by Doane College at Crete, Nebraska, is exempt from general taxation.

In 1957 the county assessor notified the college that the president's house and the faculty housing units owned by the college were being added to the tax rolls. The college filed a protest with the county board of equalization requesting that the property be stricken from the tax rolls. After a hearing the board found that the property was not exempt. The college then appealed to the district court. The district court held that the president's house was exempt but that the faculty housing units were not exempt. The college has appealed from the judgment of the district court and the county has cross-appealed.

There is no dispute in this case concerning the facts. The questions involved here are questions of law and in-

volve the application of the constitutional and statutory provisions relating to the exemption of property from general taxation. The Constitution and the statute enacted pursuant thereto provide that property owned and used exclusively for educational purposes, when such property is not owned or used for financial gain or profit to either the owner or user, shall be exempt from taxes. Art. VIII, § 2, Constitution of Nebraska; § 77-202, R. R. S. 1943.

In a number of cases this court has held that the provisions exempting property from taxation are to be strictly construed, that their operation should not be extended by construction, and that the power and right of the state to tax are presumed and the exemption must be clearly granted. This does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the Legislature but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption. Iota Benefit Assn. v. County of Douglas, 165 Neb. 330, 85 N. W. 2d 726, 66 A. L. R. 2d 898.

"The theory that the rule requiring strict construction of a tax-exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. Rather ought it to be the rule that such words as 'charitable' should be given a fair and reasonable interpretation, neither too broad nor too narrow, in ascertaining the true intent as to the objects of exemption, and then that the statute should be strictly applied and enforced in order not unduly to extend its scope. The rule does not call for a strained construction, adverse to the real intention, but the judicial interpretation of such a statute should always be reasonable." Young Men's Christian Assn. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060.

Doane College is a nonprofit, religious, and educational

institution which has been located at Crete, Nebraska, since 1872. It is a liberal arts college which grants a Bachelor of Arts degree. Currently Doane College is the church-related school for the Congregational Christian Conferences of Nebraska, Kansas, and Colorado. In 1958-1959 the enrollment was 331.

The central campus of the college consists of 90 acres on which 14 permanent buildings and 6 temporary structures are located. The usual facilities of the college including the library, dormitories, classrooms, gymnasium, auditorium, conservatory, science building, Little Theatre, observatory, and the faculty housing units in question are located on this campus.

In 1942 the college purchased a residence property for use as the official residence of the president of the college. This property is located immediately across the street from the campus and adjoins or overlooks the campus. The residence is furnished to the president of the college without charge. As a part of his contract of employment the president is required to live there. In addition to being the living quarters of the president of the college, the president's house is the center for the reception of new faculty members, foreign visitors, the trustees, and their families. It is used as housing for prospective faculty members and foreign visitors on their visits to the campus and it is used extensively for student group meetings and conferences, senior receptions, and freshmen orientation receptions. The president uses one room for a library and a study where he carries on his work outside of his regular office hours.

It is the exclusive use of property which determines its exempt character from taxation. Nebraska Conf. Assn. Seventh Day Adventists v. County of Hall, 166 Neb. 588, 90 N. W. 2d 50. The primary or dominant use, and not an incidental use, is controlling in determining whether property is exempt from taxation. Ancient and Accepted Scottish Rite of Freemasonry v. Board of County Commissioners, 122 Neb. 586, 241 N. W. 93, 81

A. L. R. 1166. If it is devoted exclusively to educational purposes, it is not liable to taxation unless such use is not direct, but remote. If property is used only partially for the purposes of education, exemption from the burdens of taxation cannot be claimed. Academy of the Sacred Heart v. Irey, 51 Neb. 755, 71 N. W. 752.

In Watson v. Cowles, 61 Neb. 216, 85 N. W. 35, the court said: "The evidence warranted the court in finding that Professor Barrett occupied the building with his family, but it did not furnish any basis for an inference that such occupancy had any proper relation to the conduct of the school. If he lived in the building as a matter of mere personal convenience or advantage, and not because it was necessary in the discharge of his duties as an educator, or to promote the success of his school, then it is evident the property was not used exclusively for school purposes, and consequently was not exempt from taxation."

The evidence in this case establishes that the president of the college lives in the official residence provided him, not as a matter of personal convenience and advantage but because it is necessary in the discharge of his duties. We think that the primary or dominant use of this property is for educational purposes and the district court was correct in holding it to be exempt.

The faculty housing units in question were built in 1956. They consist of two apartment buildings constructed on the main campus near the southwest corner. Each building contains four housing units. The units are rented to members of the faculty for $62.50 per month for a two-bedroom unit and $70 per month for a three-bedroom unit. This is considered to be the fair market rental value of comparable privately owned property in Crete.

None of the members of the faculty of the college are required to live in the housing units and their salaries are fixed without regard to whether they live in the units. The units are intended to be residence facilities

for new members of the faculty and their families during their first 2 or 3 years at the college. After that time they are expected to obtain other housing and the units will be rented again to new members of the faculty. The units are not rented to anyone except members of the faculty.

The housing units were constructed in an effort to relieve a critical housing situation in Crete and to give the college a competitive advantage with other schools in attracting and employing new members of the faculty. Endowment funds were used in constructing the units and the income from them is considered to be endowment income and is placed in the current operational fund. The housing units yield a reasonable amount of income and the college intends to keep charging rent after the amount of endowment funds originally invested in the units has been recovered.

The evidence establishes that the faculty housing units are not owned or used for financial gain or profit to either the owner or user but that alone is not sufficient to bring the property within the exemption provisions of our law. County of Douglas v. OEA Senior Citizens, Inc., 172 Neb. 696, 111 N. W. 2d 719.

There is a distinction between the use of the property and the use of the income therefrom. In a number of cases this court has held that where a building was rented, the property or that part of it which was rented was not exempt from taxation even though the rent received was used for a purpose which was exempt under the statute. First Christian Church of Beatrice v. City of Beatrice, 39 Neb. 432, 58 N. W. 166; Y. M. C. A. of Omaha v. Douglas County, 60 Neb. 642, 83 N. W. 924, 52 L. R. A. 123; Plattsmouth Lodge, A. F. & A. M. v. Cass County, 79 Neb. 463, 113 N. W. 167; Young Men's Christian Assn. v. Lancaster County, *supra*.

The college argues that the faculty housing units are exempt because they are necessary for the operation of a college such as Doane College; that the members of

the faculty counsel with the students in their homes and that student consultation, training, and organization meetings are held there; that the close relationship between the students and faculty is an important characteristic of the training available at a college such as Doane College and is an integral part of the scholastic program; and that the housing units are necessary in order for Doane College to maintain a satisfactory faculty and administration.

Consideration must also be given to the fact that the college is in the housing business. The faculty housing units in question, which are rented at their fair market rental value, are in direct competition with other similar privately owned property. This is true even though the occupancy of the units is restricted to members of the faculty.

The evidence is that in 1959 the college had approximately 30 faculty members. Thus, more than two-thirds of the faculty members reside in dwellings other than the units in question and, presumably, carry on their program of student counseling at their homes.

Without question, the college has gained many benefits as a result of the construction of the faculty housing units. The college is to be commended for this action which resulted in providing suitable housing for some of its faculty, improved facilities for student counseling and conference activity, and a reasonable yield of endowment income for the current operational funds of the college.

The college has cited cases from other jurisdictions which have held similar property to be exempt under the laws of those states. We have considered the decisions cited but they are not controlling here.

This court is of the opinion that the use of the faculty housing units for educational purposes was incidental, or remote and not direct, and that the primary or dominant use of this property was not for educational purposes.

The district court was correct in holding that this property was not exempt.

The judgment of the district court is correct and is affirmed.

AFFIRMED.