THE LINCOLN WOMAN'S CLUB, A CORPORATION, APPELLEE, v. CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.

133 N. W. 2d 455

Filed February 26, 1965. No. 35833.

Ralph D. Nelson and Henry L. Holst, for appellants.

Marti, O'Gara & Dalton and Douglas Marti, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

McCOWN, J.

This is an action brought by the Lincoln Woman's Club, a corporation, against the City of Lincoln, Nebraska, and certain of its officers, to enjoin the collection of 1962 taxes on certain real estate constituting the headquarters building of the club.

The district court entered a judgment finding such taxes void except as to the portion of the basement used as a caretaker's apartment, and enjoined the enforce-

ment of taxes against the real estate except the portion properly attributable to the apartment.

The Constitution of Nebraska provides in part: "The Legislature, by general law may exempt * * * property owned and used exclusively for educational, religious, charitable * * * purposes, when such property is not owned or used for financial gain or profit to either the owner or user." Art. VIII, § 2, Constitution of Nebraska. The Legislature has used this same language in exempting such property from taxation. § 77-202, R. R. S. 1943.

The property here involved is not owned or used for financial gain or profit to either the owner or user, and the sole issue is whether the property was owned and used exclusively for educational, religious, or charitable purposes within the meaning of the Constitution and statutes of Nebraska.

The operations of the plaintiff vary extensively from stereotype conceptions of club operations, and the evidence is uncontradicted. We therefore deem it advisable to outline the facts in rather extensive detail.

The Lincoln Woman's Club was formed in 1894 and incorporated in 1907 as a nonprofit corporation. Its articles of incorporation provide in part that: "The objects and purposes for which this corporation and club is formed and exists are educational, religious and charitable." The articles also provide that upon dissolution, the assets of the corporation are to go for educational or charitable purposes. The club has approximately 300 members of whom over 100 are life members, having paid $100 each; and approximately 200 who pay annual dues of $6, $5 of which goes to the local club and $1 to the general federation. There are no restrictions on membership based on race, creed, color, or age, and no formal application for membership is required. The club has no paid officers, and no member or officer receives any remuneration for any services performed. It has six departments: American citizenship, Bible,

bridge, fine arts, home, and kensington. Each department has the privilege of picking some particular charitable organization or other project for which it wants to work. The club, as a whole, also receives funds from a food booth at the state fair.

The building involved is the headquarters of the club in Lincoln, Nebraska. It has no facilities, as such, for reading or relaxation by the members, and is closed to all except certain officers except when some activity of the club is going on.

The building has a total square footage of 8,590 feet, equally divided between the main floor and the basement. The basement contains an auditorium, a furnace room, rest rooms, a small storage room, and the caretaker's apartment. The first floor contains an office, reception room, kitchen, restrooms, and an auditorium. Each auditorium is approximately 3,000 square feet. The basement auditorium is used about one-tenth as much as the main-floor auditorium. On the main floor, the reception room is used practically every day, usually to open the drapes, and each of the 6 departments uses it 10 or 12 times a year and it is not used the balance of the time. The kitchen is used about twice a week by department committees and is not used otherwise. The club expects to "clear at least half" from the sale of food to members and usually charges $1 for luncheons. One-half of the proceeds from food service to members goes to department projects. The auditorium on the main floor was used about 3 times a week for meetings and 12 times a year for project luncheons. There were also parties and teas held in the auditorium, but no tea, luncheon, or party was held that was not in connection with one of the programs. Otherwise, the auditorium was not used. Income from programs, luncheons, teas, and parties goes into the community for the chosen projects. Each general meeting is preceded by a worship service which lasts from 5 to 10 minutes.

The American citizenship department met approxi-

mately eight times in 1962, mostly in the upstairs auditorium, and the chief purpose of the department is to learn about civic, national, and world government. Speakers bring them educational lectures or programs. The members on many occasions go over to observe the Legislature in session.

Programs in the Bible department usually consist of talks by ministers of the community and the department had eight or nine meetings in 1962. The "pancake brunch" was the department's money making project. It also had programs called the "Bible's Music," the "Bible's Stories," and "The Bible as Psychology." It also had a book review "On Asia's Rim" and "Israel in Pictures." These programs were held in the main auditorium. The department's money, in the amount of $60 or $70, was sent to the Belmont Community Center, plus a donation of food.

The bridge department meetings and luncheons are generally held in the main auditorium. During 1962, the department had 16 meetings at which its members played bridge, 13 times with an instructor, and 3 times without an instructor. Funds for the department are raised by luncheons held in the building. The members pay a bridge instructor and they, in turn, take their instruction to the State Hospital and other hospitals, giving parties for the inmates. The club charges a 50-cent guest fee for outsiders who have bridge instruction. The bridge department project for several years has been Westview Rest Home and the wards at the State Hospital. The department has adopted three wards at the State Hospital, including a ward of boys. From the bridge department funds, the members remembered every child's birthday, having a party at the hospital for the whole group. The department has likewise sponsored a group of elderly ladies. The department's service to them has largely been to take them in the members' cars for outings and take them on shopping trips. Some were taken into the members' homes and taught or

helped in making their own clothing. The department also gave a sum of money to the convalescent ward of the General Hospital for books.

The fine arts department has been used largely to provide scholarships. It has given public concerts for the purpose of raising money to sponsor students of the community in the pursuit of education in the fine arts.

The home department stresses educational things pertaining to homemaking or foods, including sewing, hat making, nutritional values of foods, and lifesaving. The department sponsored the showing of cancer films at a local theater. In 1961-1962, the department contributed $1,500 to the Lancaster County Cancer Society and $1,500 to the Childrens Zoo. It helped finance the education of a student nurse. The department has a literature section which features book reviews. It has had lectures also on Alcoholics Anonymous and parliamentary procedure. The department also has a committee on "Magazines for Friendship" which screens magazines for propaganda and then sends them to foreign countries, hospitals, universities, etc. This committee works in the basement of the building.

The kensington department met once a month in 1962. It gave over 1,000 garments to the community emergency shop, the larger part of the garments being new and made by members either in the building or in their homes. Materials are distributed at the club house for garments made at home, and are sometimes taken to the members. When the clothing is finished, it is stored in the basement until it is delivered to the community emergency shop, Belmont Center, or to the Indian families of Lincoln. The department has also had programs from LARC School, the community emergency shop, the police department, and Tabitha Home.

This court on many occasions has passed upon the specific tax exemption provisions with which we are here concerned. It is well settled that provisions exempting property from taxation are to be strictly construed;

that their operation should not be extended by construction; and that the power and right of the state to tax are presumed and the exemption must be clearly granted. This does not mean that there should not be a liberal construction of the language used in order to carry out the expressed intention of the fundamental lawmakers and the Legislature but, rather, that the property which is claimed to be exempt must come clearly within the provisions granting such exemption. Doane College v. County of Saline, 173 Neb. 8, 112 N. W. 2d 248.

The theory that the rule requiring strict construction of a tax exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. A liberal and not a harsh or strained construction is to be given to the terms "educational," "religious," and "charitable" in order that the true intent of the constitutional and statutory provisions may be realized. The judicial interpretation of such statute should always be reasonable. Young Men's Christian Assn. v. Lancaster County, 106 Neb. 105, 182 N. W. 593, 34 A. L. R. 1060. The term "religious" has been held to require neither the profession of a sectarian creed, nor the formal dedication or occupation of property to promote the objects and purposes of a faith thus expressed. This court has said that education "may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course of training —moral, intellectual, and physical." Ancient and Accepted Scottish Rite v. Board of County Commissioners, 122 Neb 586, 241 N. W. 93, 81 A. L. R. 1166.

The word "charitable" has been held to mean something more than mere alms-giving or the relief of poverty and distress and it has been given a significance broad enough to include practical enterprises for the good of humanity operated at a moderate cost to those

who receive the benefits. Young Men's Christian Assn. v. Lancaster County, *supra.*

Within the guidelines previously established by this court, the facts of this particular case establish the aims and purposes of the Lincoln Woman's Club as religious, educational, and charitable.

It is argued that certain programs and activities of the woman's club should not be considered educational; that certain other activities of the club should not be considered charitable or religious; and that the Constitution and exemption statute should be construed to require for exemption that activities be either all religious, all educational, or all charitable. It is not essential that the use of property be exclusively for one of the three purposes. This court, as early as 1932, held that the word "or" could be construed to mean "and" when necessary to arrive at the true legislative intent. This court said: "Therefore, in the instant case, in view of the general purpose to be promoted, it may not be said that the right of exemption is dependent on the fact that the property involved was used for purposes exclusively educational, or exclusively religious, or exclusively charitable, construing the three conditions to be distinct and mutually exclusive. Reason would dictate that, if property is in fact used for no other purposes than those which are educational, religious, and charitable, it is plain that the conditions of the exemption have been strictly complied with, irrespective as to the matter of proportion which any one of these distinctive purposes may bear to the others." Ancient and Accepted Scottish Rite v. Board of County Commissioners, *supra.*

It is essential to determine whether the woman's club, not in its aims and purposes alone, but in what it actually does in its building to carry them out, is religious, educational, or charitable, before it can be determined that the uses to which the building was put partake of these characteristics.

It is the exclusive use of property which determines

whether the property is exempt from taxation. This court has been long committed to the principle that the primary or dominant use, and not an incidental use, is controlling in determining whether property is exempt from taxation. Doane College v. County of Saline, *supra;* Ancient and Accepted Scottish Rite v. Board of County Commissioners, *supra.* From the uncontradicted record here, the primary and dominant use of the building is for religious, educational, and charitable purposes. The evidence is clear that no tea, luncheon, or party was held except in connection with one of the programs in the building. There is no evidence in the record that any social functions are more than incidental to the primary purposes and objectives of the club. The record also shows that the building involved has no facilities as such for reading or relaxation by the members and is closed except when some activity of the club is going on.

The City argues inferentially that since there is evidence that some activities are considered by some members to be "enjoyable" or "fun," such activities somehow cannot be religious, educational, or charitable. We cannot agree. There are many persons who enjoy education, many persons who find enjoyment in religion, and others who find fun in charity. The mental or emotional response of individuals to an activity certainly cannot be a judicial criterion in determining whether or not the activity is "religious," "educational," or "charitable."

There is no question but that it is the use of the property as distinguished from the use of the income from the property that determines whether it is exempt from taxation. It has been strenuously contended that since some of the incidental activities produced from the members a small amount of income, which is admittedly devoted to educational and charitable purposes, therefore, the use of the property was income producing, rather than religious, charitable, or educational. We cannot agree that an incidental use of property which produces some funds from members makes the use any less an

incidental use, where such funds are devoted to the primary and dominant purposes of the organization. Young Women's Christian Assn. v. City of Lincoln, 177 Neb. 136, 128 N. W. 2d 600. To so hold would necessitate the denial of tax exemption to a church because its women's society derived funds from a church supper.

There has been some emphasis placed on the fact that a portion of the charitable work of the woman's club is done by the members off the premises involved. While this is true, it does not in any way affect the primary or dominant use of the premises.

The City has pointed out that the building, and in particular certain portions of the building of the club, are used only a small fraction of the time. While this court has held that premises not used at all do not qualify for tax exemption under the applicable constitutional and stautory provisions, it does not follow that use of the premises must be continuous or daily or any major proportion or amount of the time. If the property is actually used exclusively for educational, religious, or charitable purposes, the exemption is not lost because the use is for less than full time.

The interpretations placed upon the exemption provisions of the Constitution and the applicable exemption statute referred to, over a period of many years, are decisive of this case. The determinations and decisions of this court have become a part of the law affecting the exemption of such properties of which we assume the Legislature is fully aware. If any change in the law regarding the exemption of such institutions and properties is to be made, it is not incumbent upon this court to take such action. While we do not slavishly adhere to precedent, nevertheless, a consistent line of decisions is entitled to great weight and should be adhered to unless the reasons therefor do not exist or are clearly erroneous or mischievous or unless more harm than good will result from doing so. Nebraska Conference

Assn. of Seventh Day Adventists v. County of Hall, 166 Neb. 588, 90 N. W. 2d 50.

The record in this case establishes that the property of the Lincoln Woman's Club, with the exception of the basement apartment of the caretaker as described, was owned and used exclusively for educational, religious, and charitable purposes within the meaning of the Constitution and exemption statute of Nebraska. The judgment of the district court was correct and should be and is affirmed.

AFFIRMED.

SPENCER, J., not participating.