BETHPHAGE COMMUNITY SERVICES, INC., A NEBRASKA
NONPROFIT CORPORATION, APPELLEE, V. COUNTY BOARD OF
PHELPS COUNTY, NEBRASKA, ET AL., APPELLANTS.

381 N.W.2d 166

Filed February 14, 1986.   No. 84-817.

Lawayne L. Feit of Mattson, Ricketts, Davies, Stewart, Calkins & Duxbury, for appellants.

Susan L. Bowman and Richard P. Nelson of Peterson Nelson Johanns Morris & Holdeman, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

The county board of Phelps County, the county board as the board of equalization for Phelps County, and Beulah Gerdes, county assessor of Phelps County (County), appeal the decision of the district court for Phelps County which held that three group homes of Bethphage Community Services, Inc. (Bethphage), were exempt from property taxation in 1983. We affirm.

Applicable in this appeal are the Nebraska Constitution and the specific statute authorizing exemption of property from taxation. "The Legislature by general law may exempt . . . property owned and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or

user." Neb. Const. art. VIII, § 2. "The following property shall be exempt from taxes: . . . (c) Property owned by educational, religious, charitable, or cemetery organizations and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user." Neb. Rev. Stat. § 77-202(1)(c) (Reissue 1981).

In its appellate review of a question whether property is exempt from taxation pursuant to § 77-202(1)(c), the Supreme Court determines tax exemption in an equitable trial of factual questions de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, the Supreme Court will consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. See *Matzke v. Board of Equalization*, 167 Neb. 875, 95 N.W.2d 61 (1959).

Bethphage was formed as a Nebraska nonprofit corporation in 1982 to provide group homes for developmentally disabled persons as close to their natural homes and community setting as possible and thereby afford an alternative to placing such persons in institutions. Bethphage also operated a "sheltered workshop" where occupational training was taught to the disabled so that they might become "competitively employed" or otherwise take their place in a "normal work situation." The county board granted a tax exemption for the workshop. "Developmentally disabled" persons include those with "mental retardation" or certain disabling conditions such as epilepsy or cerebral palsy. According to the standards contained in its "Policy and Procedural Manual," Bethphage characterizes a "developmental disability" as a severe, chronic disability of a person which is attributable to mental or physical impairment, or combination of such impairments, manifested before age 22, likely to continue indefinitely; and which results in a substantial function limitation in three or more of the following major life activities: self-care, receptive and expressive language, learning, mobility, self-direction, capacity for independent living, and economic self-sufficiency.

Bethphage's group homes are licensed by the State of Nebraska and are subject to regulation by the state's Office of

Mental Retardation. Although Bethphage derives some revenue from certain charges to residents of the group homes, Bethphage receives funds through the Office of Mental Retardation. Bethphage does not distribute any part of its income to its members, directors, officers, or private individuals, does not accumulate profits for distribution, and is exempt from federal income taxation. See Neb. Rev. Stat. §§ 21-1901 et seq. (Reissue 1983) (Nebraska Nonprofit Corporation Act).

Residents of the group homes receive occupational training at the sheltered workshop. When they are not at the workshop, residents of the homes, through encouragement from supervisors, correlate the day's occupational training with proper social behavior. According to a Bethphage representative, the disabled persons "placed competitively in employment situations in the community lose their work or lose their job, not because they cannot do the work, but generally because of a socially inappropriate behavior." Residents of the group home receive instruction on how to deal with prospective situations outside the workshop involving insensitive remarks or deliberate derision by fellow workers at the expense of a disabled person. At the homes, records are kept reflecting a resident's adjustment to social situations, ability to communicate, and awareness of environment, as well as fundamental and general hygiene and maintenance, in order that good personal and social habits might be developed. Correlation between social behavior and occupational training or job skill is designed to produce "normalization" in the daily life of a disabled person. Only persons who can learn and benefit from such a program may reside in the group homes.

Bethphage applied to the Phelps County assessor for a property tax exemption for 1983 concerning its three group homes. See Neb. Rev. Stat. § 77-202.01 (Reissue 1981). After the assessor denied the requested tax exemption on September 6, 1983, Bethphage requested a hearing before the Phelps County Board of Equalization, see Neb. Rev. Stat. § 77-202.02 (Reissue 1981), which, on September 27, also denied tax exemption for the group homes. As a result of Bethphage's appeal, the district court, after a trial de novo, see Neb. Rev.

Stat. § 77-202.04 (Reissue 1981), held that the group homes were used exclusively for educational and charitable purposes, were not used for financial gain or profit, and were, therefore, exempt from property taxation for the year 1983.

The County claims the district court erred in (1) holding that the group homes were property used exclusively for educational and charitable purposes; (2) holding that Bethphage's property was not owned and used for financial gain or profit to either the owner or user; and (3) failing to rule that any educational or charitable use of the property was merely incidental to use of the property as a housing facility available to residents for a charge.

Because the power and right of a state to tax property are presumed, tax exemption provisions are strictly construed, and their operation will not be extended by construction. *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965). Property which is claimed to be exempt must clearly come within the provision granting exemption from taxation. *Doane College v. County of Saline*, 173 Neb. 8, 112 N.W.2d 248 (1961). However, this does not mean that statutory language should not receive a liberal construction to carry out the express legislative intent. *Doane College v. County of Saline, supra.*

In reference to § 77-202(1)(c), this court has held that *exclusively* means the primary or dominant use of property, not an incidental use of the property. *Ancient and Accepted Scottish Rite v. Board of County Commissioners*, 122 Neb. 586, 241 N.W. 93 (1932); *Lincoln Woman's Club v. City of Lincoln, supra*; *Doane College v. County of Saline, supra.*

In *Ancient and Accepted Scottish Rite v. Board of County Commissioners, supra*, this court interpreted Neb. Const. art. VIII, § 2, construed the statutory precursor of § 77-202(1)(c), and held *educational*

> taken in its full sense is a broad, comprehensive term and may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical.

122 Neb. at 593-94, 241 N.W. at 95-96. With such meaning attributed to *educational*, the court then held that temple property was utilized in "instruction and training received by [the temple's] initiates and membership, directed either to their mental or moral faculties . . . ." *Id.* at 594, 241 N.W. at 96.

More than 30 years after *Ancient and Accepted Scottish Rite v. Board of County Commissioners, supra*, this court in *Lincoln Woman's Club v. City of Lincoln, supra*, considering property used to learn about civic, national, and world government and as a site for instruction in bridge, "homemaking," book reviews, and lectures on Alcoholics Anonymous, held:

> [We have] said that education "may be particularly directed to either mental, moral or physical faculties, but in its broadest and best sense it embraces them all, and includes not merely the instructions received at school, college, or university, but the whole course of training—moral, intellectual, and physical." [Citing and quoting from *Ancient and Accepted Scottish Rite v. Board of County Commissioners, supra*.]

*Lincoln Woman's Club v. City of Lincoln, supra* at 363, 133 N.W.2d at 459.

In substance, the County contends that activities occurring at group homes are merely incidental to operation of the facilities as a dormitory or residence for disabled persons. We cannot agree with the County's myopic view of the educational function found in the group homes.

Education should not be determined by some quantitative analysis of a formal curriculum but may be measurable in reference to training received as reflected in an individual's enhanced behavior. In its most basic sense education is simply development, as fully as possible, of an individual's given capacity, preferably for desirable qualities. Because they are special people, the residents of the group homes receive special training—education—for life beyond Bethphage. Thus, the activities at the group homes are educational within the meaning recognized by this court in *Ancient and Accepted Scottish Rite v. Board of County Commissioners, supra*.

Bethphage does not distribute any of its income to its

members, directors, officers, or private individuals and, therefore, does not use its property for financial gain or profit. See *United Way v. Douglas Co. Bd. of Equal.*, 215 Neb. 1, 337 N.W.2d 103 (1983).

We agree with the district court that Bethphage's property was exempt from taxation in 1983 as a result of its use for an educational purpose. We realize that the district court also held that Bethphage's property was used for a charitable purpose. However, the bases for exemption from taxation, pursuant to § 77-202(1)(c), are stated in the disjunctive. Having determined that one of the uses enumerated in § 77-202(1)(c) exempts Bethphage's property from taxation, unlike Browning, regarding an additional basis for exemption, we need not "count the ways."

AFFIRMED.