IMMANUEL, INC., A NEBRASKA NONPROFIT CORPORATION, APPELLANT, V. BOARD OF EQUALIZATION OF DOUGLAS COUNTY, NEBRASKA, APPELLEE.

384 N.W.2d 266

Filed April 4, 1986.   No. 84-712.

Wesley E. Hauptman of Erickson & Sederstrom, P.C., for appellant.

Donald L. Knowles, Douglas County Attorney, Rockford G. Meyer, and H.L. Wendt, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Immanuel, Inc. (Immanuel), doing business as Immanuel Medical Center, appeals the decision of the district court for Douglas County, Nebraska, which held that a facility owned and operated by Immanuel Medical Center known as the Immanuel Employee Child Care Center (Child Care Center), was not exempt from property taxation in 1982. Immanuel assigns as error the trial court's (1) failure to find that the subject property was exclusively used for charitable purposes, (2) failure to find that the issue regarding educational use of the subject property was properly raised before the Douglas County Board of Equalization, (3) failure to find that the subject property was exclusively used for educational purposes, and (4) failure in not using a liberal standard in construing the terms "educational" and "charitable." For the reasons set out hereinafter, we reverse.

The record shows that Immanuel is a nonprofit corporation organized and doing business under the Nebraska Nonprofit Corporation Act. Neb. Rev. Stat. §§ 21-1901 et seq. (Reissue 1983). Immanuel does not distribute any part of its income to its members, directors, officers, or private individuals and is exempt for federal income tax purposes. Immanuel's primary purpose is to provide health care to the public. Immanuel Medical Center is a 615-bed health care complex located on a 130-acre campus near 72d Street and Redick Avenue in Omaha, Nebraska. Immanuel Medical Center consists of Immanuel Hospital, Immanuel Professional Plaza, a center for continuing education, a community mental health center, an alcoholism treatment center, a nursing home, a motel for outpatients and families of inpatients, an apartment complex serving persons of retirement age, and, for children of Immanuel employees, the child day-care center which is the subject of the instant case. All of these buildings are located on Immanuel's 130-acre campus in close proximity to one another.

In 1980 Immanuel began construction on the Child Care Center. That facility became operational in May 1981. As previously stated, the Child Care Center provides child day care for the exclusive use of Immanuel employees. The Child Care Center is open 5 days a week from 6 a.m. to 6 p.m. and is licensed by the Department of Social Services. Sixty children, ranging in age from 6 weeks to 12 years, are cared for at the Child Care Center. The initial motive in establishing such a facility was for the recruitment and retention of nurses and other professional employees. The cost to Immanuel employees utilizing the Child Care Center is slightly above the average charged by similar day-care centers in the Omaha area.

On August 26, 1982, Immanuel applied for a real estate tax exemption with the Douglas County assessor's office for the property upon which the Child Care Center is located. On October 8, 1982, the county assessor's office denied Immanuel's claim for exemption, stating, "This property is used as a Child Care center by Immanuel employees and is an employee benefit."

A hearing was held before the Douglas County Board of Equalization (Board) on October 26, 1982, concerning the tax-exempt status of the Child Care Center. See Neb. Rev. Stat. § 77-202.02 (Reissue 1981). Upon the recommendation of the Douglas County assessor's office, the Board denied Immanuel's application for exemption from real estate taxes.

Immanuel then timely appealed the Board's decision to the district court, which held that the Child Care Center "is not reasonably necessary for the operation of the Immanuel Medical Center, and is not being used exclusively for charitable purposes."

The power and right of the state to tax property are presumed, and therefore tax exemption provisions are strictly construed, and their operation will not be extended by construction. The subject property which is claimed to be exempt must clearly come within the provisions granting tax exemption. However, this does not mean that the statutory language should not receive a liberal construction to carry out the express legislative intent. See *Bethphage Com. Servs. v. County Board*, 221 Neb. 886, 381 N.W.2d 166 (1986).

The relevant statute in this case is Neb. Rev. Stat. § 77-202(1)(c) (Reissue 1981). We have previously held that in our appellate review of a question whether property is exempt from taxation pursuant to § 77-202(1)(c), this court determines tax exemption in an equitable trial of factual questions de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, the Supreme Court of Nebraska will consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. See *Bethphage Com. Servs. v. County Board, supra.*

Section 77-202(1)(c) requires the applicant for tax exemption to prove three things: (1) That the subject property is owned by a charitable, educational, religious, or cemetery organization; (2) That the subject property is not being used for financial gain or profit to the owner or user; and (3) That the subject property is being used exclusively for charitable, educational, religious, or cemetery purposes. The Board concedes that the Child Care Center is owned by a charitable organization and is not being owned or used for financial gain or profit to Immanuel. The Board, however, contends that the Child Care Center is not being used exclusively for charitable or educational use.

In reference to § 77-202(1)(c) this court has held that *exclusively* means the primary or dominant use of property, not an incidental use of the property. *Lincoln Woman's Club v. City of Lincoln*, 178 Neb. 357, 133 N.W.2d 455 (1965). Immanuel's first assignment of error is that the district court erred in not finding that the Child Care Center is used exclusively (as that term has been defined by this court in the context of cases such as this) for charitable purposes.

In *Lincoln Woman's Club, supra* at 363-64, 133 N.W.2d at 460, we held:

> The word "charitable" has been held to mean something more than mere alms-giving or the relief of poverty and distress and *it has been given a significance broad enough to include practical enterprises for the good of humanity* operated at a moderate cost to those who receive the benefits.

(Emphasis supplied.)

In *United Way v. Douglas Co. Bd. of Equal.*, 215 Neb. 1, 337

N.W.2d 103 (1983), we stated that the underlying policy in providing a tax exemption for charitable use is that such use benefits the general public. In *United Way, supra* at 3, 337 N.W.2d at 105, we said: "The policy in providing for tax exemptions for charitable uses is based on the principles that tax exemptions benefit the public generally and the organization performs services which the state is relieved pro tanto from performing."

The Board argues that based upon the facts in this case the Child Care Center is simply not being used for charitable purposes. The Board contends that the Child Care Center is merely a convenient day-care service provided to Immanuel's employees at prevailing fair market rates and that the predominate use of the Child Care Center is for day care, which is not a charitable use. It further argues that the Child Care Center does not benefit the public generally but, rather, provides a direct benefit to Immanuel's employees.

We disagree with the Board's conclusion. It is clear that Immanuel is entitled to tax exemption for its hospital and hospital grounds as a charitable use of property. See, *St. Elizabeth Hospital v. Lancaster County*, 109 Neb. 104, 189 N.W. 981 (1922); *Lanning Memorial Hospital Ass'n v. Adams County*, 117 Neb. 618, 221 N.W. 959 (1928). As we stated in *Bethesda Foundation v. County of Saunders*, 200 Neb. 574, 578, 264 N.W.2d 664, 667 (1978), hospitals "are universally classed as charitable institutions."

In extending tax exemption to a hospital, only those facilities which are reasonably necessary for the competent operation of the hospital should receive tax-exempt status. The Board admits that such facilities would include cafeterias, employee restrooms, and locker rooms. Employee parking lots generally receive tax-exempt status also. See Annot., 33 A.L.R.3d 938 (1970). The Board argues that the Child Care Center is not reasonably necessary for the operation of the hospital, as a hospital, and therefore the Child Care Center is not entitled to tax exemption. We disagree.

Jacquelyn Wilcoxson, the director for nursing service at Immanuel, testified that nursing care provided at Immanuel is primary nursing, which means that there is continuity of care.

A nurse is responsible for the same patient throughout the patient's stay in the hospital. If that continuity of care would be broken, due to the nurse's absence for any reason, then the patient's care suffers. One of the frequent reasons for the absence or tardiness of nurses is the difficulty in obtaining reliable care for their children while they are working. Wilcoxson further testified that many articles have been written indicating that when nursing care is carried out continuously, there is certainly a beneficial effect on the patient's recovery. Wilcoxson also testified that, since the opening of the Child Care Center, the absenteeism and tardiness of the nursing staff had declined. Gail Flanery, a consultant on child care, also testified on Immanuel's behalf. Flanery testified that a recent study of 415 companies, one-half being hospitals, including Immanuel, showed that where on-site or nearby-site day care is offered, there are generally wide-ranging positive effects, including an increase in employee productivity. In addition, recruitment of new employees is definitely improved when child care is offered. Flanery further testified that employee turnover, absenteeism, and tardiness are all significantly reduced where child care similar to that of Immanuel is offered.

The Board places particular emphasis on *Doane College v. County of Saline*, 173 Neb. 8, 112 N.W.2d 248 (1961). In *Doane College, supra*, we denied tax exemption to several buildings owned and located on the Doane College campus. These buildings were apartments which were rented to members of the faculty at rental rates comparable to privately owned property in the community. The college presented evidence that the housing units were constructed in an effort to relieve a critical housing situation in the area and to give the college a competitive advantage with other schools in attracting and employing new members of the faculty. In denying tax exemption we held that "the use of the faculty housing units for educational purposes was incidental, or remote and not direct, and that the primary or dominant use of this property was not for educational purposes." *Id*. at 14, 112 N.W.2d at 252.

The record before us supports the fact that the Child Care Center has a direct benefit in alleviating staffing problems at the hospital and in aiding the primary nursing care to patients.

We find that the Child Care Center is reasonably necessary for the operation of the hospital for the furnishing of those benefits and should be granted tax-exempt status. Because of this disposition of the case, we need not consider any further errors assigned by Immanuel.

The judgment of the district court is reversed.

REVERSED.

HASTINGS, J., concurs in the result.