Harold Warp Pioneer Village Foundation, appellant,
v. Doug Ewald, Tax Commissioner,
et al., appellees.
___ N.W.2d ___

Filed December 13, 2013.    Nos. S-13-129, S-13-165.

1. **Taxation: Judgments: Appeal and Error.** Appellate courts review decisions
   rendered by the Tax Equalization and Review Commission for errors appearing
   on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appear-
   ing on the record, an appellate court's inquiry is whether the decision conforms
   to the law, is supported by competent evidence, and is neither arbitrary, capri-
   cious, nor unreasonable.
3. **Taxation: Appeal and Error.** An appellate court reviews questions of law aris-
   ing during appellate review of decisions by the Tax Equalization and Review
   Commission de novo on the record.

Appeals from the Tax Equalization and Review Commission.
Reversed and remanded with directions.

Daniel L. Aschwege, of Knapp, Fangmeyer, Aschwege,
Besse & Marsh, P.C., for appellant.

Jon Bruning, Attorney General, and Jonathan D. Cannon,
Special Assistant Attorney General, for appellees Doug Ewald
and Ruth Sorensen.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
Miller-Lerman, and Cassel, JJ.

Stephan, J.
The Harold Warp Pioneer Village Foundation (Foundation)
owns and operates the Pioneer Village Museum in Minden,
Nebraska. The Foundation also owns and operates a nearby
motel and campground; both are used primarily by museum
visitors. For many years, the museum, the motel, and the camp-
ground have all been granted property tax exemptions. When
the Kearney County Board of Equalization granted the exemp-
tions for 2011, state tax officials appealed to the Nebraska Tax
Equalization and Review Commission (TERC), contending
the motel and campground were not entitled to exemptions.
TERC agreed, and the Foundation has appealed from those

determinations. We conclude that the motel and campground are beneficial to the museum and reasonably necessary to further its educational mission and are therefore entitled to property tax exemptions.

## BACKGROUND

The Foundation is a Nebraska nonprofit corporation which owns and operates the museum. The museum is an educational institution designed to preserve history and technology for future generations. The museum displays approximately 50,000 exhibits in 28 buildings on 20 acres of land. A museum patron wishing to view every exhibit offered would need to visit the museum every day for more than 1 week. Approximately 30 percent of museum patrons spend more than 1 day viewing the exhibits.

The Foundation also owns and operates an 88-room motel and a campground located near the museum. The campground offers sites for recreational vehicles and tents. The motel and campground are open to the public, but their primary purpose is to lodge patrons of the museum. Of the 17,072 guests of the motel and campground in 2010, only 4.2 percent did not attend the museum. There are no other lodging facilities in Minden or Kearney County suitable to accommodate museum patrons. The closest campground is 12 miles away, and the closest motel is approximately 20 miles away. Without the revenue generated by the motel and campground, the museum would not have sufficient funds to continue its operations.

The Foundation applied for and was granted property tax exemptions for the museum, the motel, and the campground every year from 1984 to 2010. In 2011, the Foundation again applied for these property tax exemptions. The county assessor recommended an exemption be granted for the museum but denied exemptions for the motel and campground. However, the board granted all three exemptions.

Doug Ewald, the Nebraska Tax Commissioner, and Ruth Sorensen, the Nebraska Property Tax Administrator, perfected appeals to TERC. One appeal challenged the exemptions for the motel, and another appeal challenged the exemption for the campground. TERC conducted a consolidated hearing and

ultimately determined that because the motel and campground were not used exclusively for educational purposes, neither was entitled to tax exemptions under Nebraska law.[1] The Foundation filed timely appeals, which we consolidated for briefing and oral argument.

## ASSIGNMENTS OF ERROR

The Foundation assigns that TERC erred in finding that (1) the motel and campground were not used exclusively for educational purposes, (2) competent evidence was presented to rebut the presumption that the board faithfully performed its duties and had sufficient competent evidence to make its determinations, and (3) the board's decision was arbitrary or unreasonable.

## STANDARD OF REVIEW

[1,2] Appellate courts review decisions rendered by TERC for errors appearing on the record.[2] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[3] An appellate court reviews questions of law arising during appellate review of decisions by TERC de novo on the record.[4]

## ANALYSIS

The property tax exemption at issue in these cases is governed by § 77-202. With certain exceptions not applicable to this case, the statute provides that property in Nebraska

---

[1] See Neb. Rev. Stat. § 77-202(1)(d) (Supp. 2011).

[2] Neb. Rev. Stat. § 77-5019(5) (Cum. Supp. 2010); *Krings v. Garfield Cty. Bd. of Equal.*, 286 Neb. 352, 835 N.W.2d 750 (2013). See *Bethesda Found. v. Buffalo Cty. Bd. of Equal.*, 263 Neb. 454, 640 N.W.2d 398 (2002).

[3] *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, 285 Neb. 705, 829 N.W.2d 652 (2013); *Schuyler Apt. Partners v. Colfax Cty. Bd. of Equal.*, 279 Neb. 989, 783 N.W.2d 587 (2010).

[4] *Lozier Corp. v. Douglas Cty. Bd. of Equal.*, *supra* note 3.

"owned by" an educational organization "for the exclusive benefit" of that organization is exempt from property tax if it is "used exclusively for educational" purposes.[5] An educational organization includes "a museum or historical society operated exclusively for the benefit and education of the public."[6] "Exclusive use" means the predominant or primary use of the property as opposed to incidental use.[7]

The relevant facts summarized above are not in dispute. The parties agree that the museum is operated exclusively for educational purposes. They also agree that the primary purpose of both the motel and the campground is to provide lodging for museum patrons. But the parties disagree as to whether the motel and campground are "used exclusively" for educational purposes so as to be entitled to property tax exemptions.

The Foundation argues that because approximately 95 percent of the motel and campground guests are museum patrons, the motel and campground are used exclusively to further the educational purposes of the museum. In essence, the Foundation concedes that the motel and campground are not educational in and of themselves. But it argues that they should be considered to be used for educational purposes because they are beneficial to the museum and reasonably necessary to support its operation, which is an educational purpose. In other words, the Foundation asks us to view the entire global structure of its operation as one integrated body that exclusively promotes educational purposes.

On the other hand, the Tax Commissioner and the Property Tax Administrator ask us to focus more narrowly on the use of the motel and campground. They contend that because these facilities are used only for lodging, which itself is not an educational use, any incidental benefit they may have to the museum is not sufficient to exempt them from property taxation.

---

[5] § 77-202(1)(d).

[6] § 77-202(1)(d)(B).

[7] See, 350 Neb. Admin. Code, ch. 40, § 005.03 (2013); *Fort Calhoun Bapt. Ch. v. Washington Cty. Bd. of Eq.*, 277 Neb. 25, 759 N.W.2d 475 (2009); *Bethesda Found. v. Buffalo Cty. Bd. of Equal., supra* note 2.

TERC concluded on the basis of the undisputed facts that the Foundation was not entitled to exemptions for the motel and campground. Under our standard of review, we must decide whether this determination "conforms to the law."[8] In the context of this case, we regard this as a question of law which we review de novo on the record.[9]

TERC found our 1961 decision in *Doane College v. County of Saline*[10] to be "controlling." In that case, Doane College applied for tax-exempt status for two separate facilities located on its campus. One was a residence reserved for the college president, and the other was an apartment complex located on campus and provided for the exclusive use of new faculty. The county board determined that neither property was tax exempt. Doane College appealed to the district court—this was prior to the existence of TERC—and that court determined that the president's residence was exempt but the faculty apartments were not.

Doane College then appealed to this court. We affirmed the judgment of the district court. In doing so, we found various factors supporting the exemption for the president's residence, including that the president was required to live in the residence; that the residence was used as a reception area for faculty, foreign visitors, and trustees; and that the residence was used for various student gatherings. We also noted that one room of the residence was used as the president's library and office. We held that this evidence demonstrated that the residence was used exclusively for educational purposes, because the primary or dominant use of the property was for education, and that thus, the president's residence was exempt from property taxation.

We concluded that the faculty apartments were not exempt, reasoning they were located on the main campus and were rented at fair market value to new faculty who were permitted but not required to reside there. We noted that more than

---

[8] *Lozier Corp. v. Douglas Cty. Bd. of Equal., supra* note 3; *Schuyler Apt. Partners v. Colfax Cty. Bd. of Equal., supra* note 3.

[9] *Id.*

[10] *Doane College v. County of Saline*, 173 Neb. 8, 112 N.W.2d 248 (1961).

two-thirds of the faculty resided elsewhere. And we reasoned that although faculty residing in the apartments sometimes met with students there, any educational use of the faculty apartments was remote, and that their primary or dominant use was not for educational purposes. We also specifically noted that the apartments were in direct competition with privately owned property for renters.

As in *Doane College*, the issue in this case is not whether the Foundation uses its property for an educational purpose, but, rather, how much of its property is used for that purpose. Two cases decided by this court after *Doane College* provide the proper analytical framework for resolving this issue. *Lariat Boys Ranch v. Board of Equalization*[11] involved a contiguous 1,000-acre tract owned by a nonprofit corporation which operated it as a "ranch home" for "indigent and wayward boys." The property owner contended that the entire tract was used for this purpose and was therefore exempt. The county, on the other hand, contended that the exemption should be limited to the 5 acres on which the boys' residences and school building were located. The county argued that the remaining land, most of which was used for grazing and farming, should not be exempt. We held that the entire tract was exempt because it was reasonably needed to promote the nonprofit's educational goals and was not excessive for that purpose. We noted that the determination of which facilities were reasonably necessary to carry out the educational goals of an entity should be undertaken on a case-by-case basis.

We again addressed the issue of whether specific property should be included within an exemption granted to a nonprofit corporation in *Immanuel, Inc. v. Board of Equal.*[12] In that case, it was undisputed that the property owner was entitled to tax exemptions for its hospital and hospital grounds because they were used for charitable purposes. The hospital built a childcare facility on its campus for the exclusive use of its employees in order to promote recruitment and retention of

---

[11] *Lariat Boys Ranch v. Board of Equalization*, 181 Neb. 198, 199, 147 N.W.2d 515, 516 (1966).

[12] *Immanuel, Inc. v. Board of Equal.*, 222 Neb. 405, 384 N.W.2d 266 (1986).

professional employees. The hospital appealed from a denial of its application for tax exemption for the childcare facility. This court determined the childcare facility was entitled to the requested exemption. Distinguishing *Doane College*, upon which the county relied, we held that the childcare facility directly benefited the hospital by alleviating staffing problems and thus aided the primary nursing care to patients, and was therefore "reasonably necessary for the operation of the hospital."[13]

Based upon the reasoning of *Lariat Boys Ranch* and *Immanuel, Inc.*, it is clear that our inquiry in this case cannot be narrowly focused on whether the overnight lodging provided by the Foundation's motel and campground is an educational purpose, as the Tax Commissioner and Property Tax Administrator contend. Rather, we must undertake a broader examination of whether those lodging facilities are reasonably necessary to the educational mission of the Foundation's museum, based upon the specific facts presented here.

The record reflects that the museum is unusual if not unique because of the combination of two factors. First, the museum houses an extensive public collection which cannot be viewed in a single day, thus creating a demand for convenient, nearby lodging for those visitors who wish to spend more than 1 day viewing the museum's exhibits. Second, the museum is situated in a relatively small community which has no public lodging facilities other than those offered by the Foundation.

The Tax Commissioner and Property Tax Administrator concede in their brief that the primary purpose of the Foundation's motel and campground "is to lodge patrons of the Museum."[14] The record reflects that the properties are being used predominantly for that purpose. Although the motel and campground are open to the public, they are utilized primarily by visitors to the museum. In each of the years from 1990 through 2010, at least 95.5 percent of the persons who stayed at the motel and campground were museum visitors. A significant majority

---

[13] *Id.* at 411, 384 N.W.2d at 270.

[14] Brief for appellees at 6.

of these were persons who did not reside in Nebraska. In 2010, all of the campground guests and 99.9 percent of the motel guests were from outside Kearney County. It was estimated that 30 percent of these museum visitors viewed exhibits for more than 1 day; those who did and wished to stay overnight in Minden had to utilize the Foundation's motel or campground.

The record includes a letter from the Internal Revenue Service dated August 18, 1983, granting the Foundation's request for exemption from federal income tax under § 501(c)(3) of the Internal Revenue Code. Although this document is not controlling on any of the issues in this case, it is instructive in its characterization of the relationship between the Foundation's museum, motel, and campground. In determining that the motel and campground were not an "unrelated trade or business" that would be subject to income tax notwithstanding the fact that they are owned by an exempt entity, the Internal Revenue Service stated:

> Your operation of the . . . motel [and] campground . . . is for the purpose of enabling your visitors to remain long enough to take in the full extent of your educational exhibits, the purpose of your exemption. Because there are not facilities of this type within a reasonable proximity to your exhibit, the time a visitor could or would spend would be sharply curtailed, i.e., to approximately half a day, yet it takes a full day or more to appreciate all your historical and educational presentations. *Making it possible for visitors to get a full measure of the educational aspects is substantially related to the accomplishment of your exempt purposes.*

(Emphasis supplied.) Although this characterization of the relationship of the museum and the Foundation's lodging facilities was made more than 30 years ago, it reflects the relationship that existed in 2011 as reflected in the record in these cases.

On the basis of that record, we conclude that TERC erred in determining that the Foundation was not entitled to exemptions for its motel and campground properties. The issue is not whether "lodging" is an educational use in an abstract

sense, but, rather, whether these specific lodging facilities were reasonably necessary to accomplish the educational purpose of the Foundation in the operation of its museum. Just as the grazing and farming lands were reasonably necessary to the charitable and educational purposes of the boys' ranch in *Lariat Boys Ranch* and the childcare facility was reasonably necessary to accomplish the charitable purposes of the hospital in *Immanuel, Inc.*, the operation of the motel and campground by the Foundation is reasonably necessary to the accomplishment of its educational mission.

Because we conclude that TERC erred as a matter of law in vacating and reversing the decisions of the board, we need not consider the Foundation's remaining assignments of error.

## CONCLUSION

For the reasons discussed, we reverse TERC's decisions which vacated and reversed the decisions of the board, and we remand each cause to TERC with directions to affirm the board's decision granting property tax exemptions to the Foundation for its motel and campground properties for the tax year 2011.

REVERSED AND REMANDED WITH DIRECTIONS.

---

IN RE INTEREST OF DANAISHA W. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
DENNISCA W., APPELLANT.

___ N.W.2d ___

Filed December 13, 2013.    No. S-13-218.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.