NEBRASKA ANNUAL CONFERENCE OF THE UNITED METHODIST
CHURCH, A NONPROFIT CORPORATION, APPELLANT, V. SCOTTS
BLUFF COUNTY BOARD OF EQUALIZATION, APPELLEE.

499 N.W.2d 543

Filed May 7, 1993.   No. S-91-142.

M. Douglas Deitchler and John W. Ballew, Jr., of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Dave Eubanks, Deputy Scotts Bluff County Attorney, for appellee.

Robert B. Crosby, of Crosby, Guenzel, Davis, Kessner & Kuester, for amicus curiae Nebraska Catholic Conference.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

The Nebraska Annual Conference of the United Methodist Church (United Methodist) appeals the decision of the district court for Scotts Bluff County which affirmed the denial of tax-exempt status by the Scotts Bluff County Board of Equalization (Board) to a Scottsbluff parsonage owned by United Methodist. We reverse and remand with directions.

## FACTUAL BACKGROUND

United Methodist is operated as an itinerant ministry, a system of regular pastoral rotation in which every pastor agrees to go where sent by the bishop. Ministers are rotated between local churches. District superintendents appointed by the bishop to assist in the overall administration of the United Methodist ministry supervise churches in a particular district.

Under this itinerant system, a Methodist minister can expect to be relocated every 5 to 8 years, and district superintendents are replaced by the bishop at least every 6 years. To facilitate this mobility, United Methodist owns numerous parsonages which provide housing for the pastors and superintendents while they are serving a particular community. There are nine such parsonages in Nebraska, each of which houses one of the church's district superintendents. The superintendents are required by United Methodist to live in these parsonages as a condition of their employment.

The parsonage at issue was built and is owned by United Methodist; for more than 20 years it has housed the northwest district superintendent of the church. The northwest district superintendent supervises the total United Methodist ministry of 25 pastors and 38 churches in the Nebraska Panhandle. In addition to his supervisory role in the administration of the United Methodist ministry, the superintendent has normal pastoral duties. He delivers sermons at the various churches in his district some 25 weeks of the year, provides pastoral support to district clergy and their families, and stands ready to substitute for pastors who are unable to minister to their congregation. Rev. Loren Mullins, the current superintendent for the northwest district, has lived in the Scottsbluff parsonage since his appointment in 1987.

In 1990, the United Methodist district committee on superintendency began to rent office space in downtown Scottsbluff for Reverend Mullins. The office is open from 8:30 to 11:30 a.m. and is used exclusively to produce the district newsletter, maintain current records on district churches, and keep current with the superintendent's correspondence. The rest of Reverend Mullins' activities, including administrative duties, preparation of sermons, theology study, church activities, counseling, church meetings, prayer meetings, recruiting of additional pastors, and storage of records and equipment, take place at an office maintained at the parsonage. The parsonage is also used by United Methodist to accommodate visiting clergy, speakers, and dignitaries.

The parsonage has continuously applied for, and received, tax-exempt status in the past, and on December 27, 1989, application was made by United Methodist for continued tax exemption. The 1990 application was disapproved by the Board, however, based on a determination that the religious use of the parsonage had changed, solely because part of the business office was moved downtown. The decision was appealed to the district court for Scotts Bluff County pursuant to Neb. Rev. Stat. § 77-202.04 (Reissue 1990), where, after a trial de novo, the district court affirmed the Board's actions. It is from this decision that United Methodist appeals.

## ASSIGNMENTS OF ERROR

United Methodist claims that the district court erred in (1) denying continuing tax-exempt status to the parsonage, because the parsonage is owned by a religious organization and is used exclusively for religious purposes; (2) directing its attention toward the superintendent's use of the property rather than United Methodist's use of the parsonage; and (3) denying tax-exempt status to the parsonage contrary to prior Nebraska Supreme Court decisions.

## STANDARD OF REVIEW

Applicable in this appeal are the Nebraska Constitution and the specific statute authorizing exemption of property from taxation. The Constitution provides that the Legislature "by general law may exempt [from taxation] property owned by

and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not owned or used for financial gain or profit to either the owner or user." Neb. Const. art. VIII, § 2. Pursuant to this provision, the Legislature has chosen to exempt property from taxation if the property is

> owned by educational, religious, charitable, or cemetery organizations and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not (i) owned or used for financial gain or profit to either the owner or user, (ii) used for the sale of alcoholic liquors for more than twenty hours per week, or (iii) owned or used by an organization which discriminates . . . based on race, color, or national origin.

Neb. Rev. Stat. § 77-202(1)(c) (Reissue 1990).

In an appeal from a district court's judgment on the question whether property is tax-exempt, an appellate court determines a tax exemption question de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, when credible evidence is in conflict on material issues of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts over another. *Nebraska State Bar Found. v. Lancaster Cty. Bd. of Equal.*, 237 Neb. 1, 465 N.W.2d 111 (1991); *Bethphage Com. Servs. v. County Board*, 221 Neb. 886, 381 N.W.2d 166 (1986).

## USE OF THE PARSONAGE

To assist in determining exemption eligibility under § 77-202(1)(c), the Nebraska Department of Revenue has promulgated regulation 42-006, 316 Neb. Admin. Code, ch. 42, §§ 006.01 through 006.05 (1943), which provides that an exemption is to be allowed only if the property at issue meets all five of the following criteria: (1) The property must be owned by an educational, religious, charitable, or cemetery organization (regulation 42-006.01); (2) the property must be used *exclusively* for religious, educational, charitable, or cemetery purposes (regulation 43-006.02); (3) the property must not be used for financial gain or profit to either the owner

or user (regulation 43-006.03); (4) the property must not be used for the sale of alcoholic liquor for more than 20 hours per week (regulation 43-006.04); and (5) the property must not be owned or used by an organization which discriminates in membership or employment based on race, color, or national origin (regulation 43-006.05).

There is no dispute in this case concerning the facts. The Board readily admits that the parsonage satisfies the ownership requirement and agrees that the property is not used for financial gain, for the sale of alcohol, or by a discriminatory organization. The only point of contention is whether the use made of the parsonage constitutes "exclusively" religious use of the property as required for tax exemption under § 77-202(1)(c).

Because the power and right of a state to tax property are presumed, tax exemption provisions are strictly construed, and their operation will not be extended by construction. *Bethphage Com. Servs. v. County Board, supra.* Property which is claimed to be exempt must clearly come within the provision granting exemption from taxation. *Doane College v. County of Saline,* 173 Neb. 8, 112 N.W.2d 248 (1961). However, this does not mean that statutory language should not receive a liberal construction to carry out the express legislative intent. *Id.*

In reference to § 77-202(1)(c), this court has held that exclusive use means the primary or dominant use of property, as opposed to incidental use. An exemption will not be lost if the property claimed to be exempt is used in an incidental manner that is not educational, religious, charitable, or cemetery use, as long as the predominant or primary use of the property is one or more of the exempt uses. *Bethphage Com. Servs. v. County Board, supra*; *Lincoln Woman's Club v. City of Lincoln,* 178 Neb. 357, 133 N.W.2d 455 (1965). See, also, *Ancient and Accepted Scottish Rite v. Board of County Commissioners,* 122 Neb. 586, 241 N.W. 93 (1932). Therefore, the only matter to be determined here is whether the parsonage's exclusive or primary use is religious.

This is the first opportunity for this court to address the question of whether a cleric's use of a parsonage constitutes exclusive religious use for exemption purposes. However, in

*Doane College v. County of Saline*, the college president's residence was at issue in the context of tax exemption for educational use. The residence, like the parsonage, was furnished to the president without charge, and he was required to live there as part of his employment contract. Reverend Mullins maintained an office outside of the house, but used one room of the residence, as did the president, as an office where he could work apart from his regular office hours. There are other similarities between the use of the parsonages by United Methodist and the use of the president's house in *Doane College v. County of Saline*. For example, the president's home was used as housing for prospective faculty members and foreign visitors. Finally, the president's home was also used for meetings, conferences, and receptions. In light of these factors, this court found:

> The evidence in this case establishes that the president of the college lives in the official residence provided him, not as a matter of personal convenience and advantage but because it is necessary in the discharge of his duties. We think that the primary or dominant use of this property is for educational purposes and the district court was correct in holding it to be exempt.

*Id*. at 12, 112 N.W.2d at 250.

The rule in *Doane College v. County of Saline* is one applied to parsonages by numerous other jurisdictions. See, *Our Savior Lutheran v. Dept. of Revenue*, 204 Ill. App. 3d 1055, 562 N.E.2d 1198 (1990); *Seventh-Day Adventists v. Bd. of Tax Com'rs*, 512 N.E.2d 936 (Ind. Tax 1987); *McKenzie v. Johnson*, 98 Ill. 2d 87, 456 N.E.2d 73 (1983); *N. D. Conf. A. of 7th-D. Adv. v. B. of C. Com'rs*, 234 N.W.2d 912 (N.D. 1975); *McCreless v. City of San Antonio*, 454 S.W.2d 393 (Tex. 1970).

The record before us shows that the parsonages are an essential part of the Methodist church, both in their day-to-day activities and within the overall scheme of the itinerant ministry of the Methodist church. The special role parsonages play in the Methodist ministry requires that consideration be given to United Methodist's unequivocal use of the parsonage in the furtherance of its religious purpose. This court has defined "religious purpose" as the following:

"Prayer is always worship. Reading the Bible and singing may be worship. * * * If these exercises of reading the Bible, joining in prayer and in the singing of hymns were performed in a church there would be no doubt of their religious character, and that character is not changed by the place of their performance." *People v. Board of Education*, 245 Ill. 334, 339. See *State v. Scheve*, 65 Neb. 853.

The conclusion follows that neither the profession of a sectarian creed, nor the formal dedication or occupation of property to promote the objects and purposes of a faith thus expressed, is an essential element of a "religious use," nor a necessary prerequisite to and of an "exclusive religious purpose."

*Ancient and Accepted Scottish Rite v. Board of County Commissioners*, 122 Neb. at 594-95, 241 N.W. at 96. It is clear that the Scotts Bluff parsonage is used "to promote the objects and purposes of a faith" and would therefore fall under the above definition.

Conversely, the Board contends, in substance, that since United Methodist has rented a downtown office for Reverend Mullins which he uses 3 hours a day, the myriad religious activities occurring at the parsonage are merely incidental to the use of the property as a residence. We cannot agree. As the Supreme Court of Oklahoma stated in *Immanuel Baptist Church v. Glass*, 497 P.2d 757 (Okla. 1972), and in the companion case of *Eastwood Baptist Church v. Glass*, 497 P.2d 761 (Okla. 1972), when it exempted from taxation a number of parsonages:

" 'It does not require a resort to the rule of liberal construction to hold that property acquired, owned, and used as is this property, is used exclusively for religious purposes within the meaning of the Constitution and statute. The exemption authorized by the Constitution is not restricted to property used exclusively for public worship, but embraces all property exclusively—that is, primarily—used for religious purposes. . . .' "

497 P.2d at 759. Reverend Mullins' use of the parsonage cannot be distinguished from the president's use of the residence in

*Doane College v. County of Saline.* The issue is whether the parsonage is being owned and used exclusively for religious purposes. The record shows it is being so used. The Board's contention is therefore without merit.

## CONCLUSION

When viewed in light of Neb. Const. art. VIII, § 2, and § 77-202(1)(c), a parsonage owned by a church, which parsonage houses a pastor who is engaged in full-time ministerial work, which parsonage is provided to him for the convenience of the church and parishioners, and which parsonage serves numerous religious purposes, is property used exclusively for religious purposes and exempt from taxation. Accordingly, we reverse the court's decision and remand the cause with directions that the district court order the Scotts Bluff County Board of Equalization to exempt the United Methodist property from taxation and refund any taxes which have been paid on the property since the Board's denial of exemption.

REVERSED AND REMANDED WITH DIRECTIONS.