MICHAEL JACKSON AND SHARON D. JACKSON, HUSBAND AND WIFE,
AND RICHARD E. DONNERMEYER AND SHIRLEY M. DONNERMEYER,
HUSBAND AND WIFE, APPELLEES, V. BOARD OF EQUALIZATION OF
THE CITY OF OMAHA, NEBRASKA, AND THE CITY OF OMAHA,
NEBRASKA, A MUNICIPAL CORPORATION, APPELLANTS.

630 N.W. 2d 680

Filed July 3, 2001.    No. A-00-419.

Paul D. Kratz, Omaha City Attorney, Robert J. Hamer, and Bernard J. in den Bosch for appellants.

James F. Cann, of Domina Law, P.C., for appellees.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

The Board of Equalization of the City of Omaha (Board) and the City of Omaha (City) appeal a decision by the district court for Douglas County which reversed a special assessment levied against the property owned by Michael Jackson, Sharon D. Jackson, Richard E. Donnermeyer, and Shirley M. Donnermeyer (Landowners) by the Omaha City Council (City Council) sitting as the Board. The City Council specially assessed the Landowners' property because the City's grading, curbing, and paving of 54th Street from Walnut to Cedar Streets in Omaha allegedly conferred special benefits on the Landowners' property.

## BACKGROUND

Three different groups own the 11 lots within the street improvement district (SID) at issue. One group, the Landowners, are two couples who own four of the lots, on which is located a building, also owned by the Landowners, which contains offices of the Nebraska Department of Labor. The Landowners have leased the building to the Department of Labor for 26 years. Peter Fink is the owner of approximately 72 percent of the front footage area in the SID, which includes the property across the street from the Landowners' property along 54th Street where a Certified Transmission business is located. Tractor-trailers use 54th Street to enter and exit Certified Transmission. Certified Transmission has at least two parking lots, one of which is an employee parking lot located along 54th Street.

In 1996, Fink asked the City to pave 54th Street. On October 1, the City adopted ordinance No. 34006, which created SID No. 6858, which included the area of 54th Street from Cedar to Walnut Streets. The ordinance designated properties to be benefited as a result of the grading, paving, and curbing of 54th Street from Walnut to Cedar Streets. Approximately 75 percent of the project's total assessable cost of $62,646.70 was assessed to Fink, while approximately 20 percent of the project's cost, or $12,884.60, was assessed to the Landowners. The project involved the widening, grading, paving, and curbing of one block along 54th Street, the repaving of a parking lot owned by Certified Transmission, and the construction of two driveways into that parking lot, plus building a sidewalk leading from Certified Transmission to 54th Street.

The Board recommended that the Landowners' special assessment be reduced by $1,900, approved the assessments, and gave the blanket conclusion as to all the different assessments discussed that day that the "real estate described in the proposed plans of assessment now before the Board, have been, and each are, severally benefited by reason of the respective improvements to the extent of the full amount as shown in the plans of assessment." Following the Board's recommendation, on October 27, 1998, the City Council reduced the assessment on the Landowners' property by $1,900 and passed special levy ordinance No. 9966, which assessed $10,984.60 of the total paving cost of $82,967.20 against the Landowners' property. The City Council concluded that the Landowners' property had been specially benefited by the amount levied "by reason of the grading, curbing and paving of that part of 54th Street from Walnut Street to Cedar Street."

The Landowners filed a petition on appeal in the district court "pursuant to *Neb Rev Stat* § 14-813, and other provisions of law." They alleged that their property received no special benefit from the paving project, that any benefit was greatly outweighed by the detriments to the property caused by the paving, and that therefore the special assessment was arbitrary and capricious, and constituted an unconstitutional taking. On February 19, 1999, the district court received the transcript of the proceedings before the Board and the City Council, and none of the parties made any attempt to offer additional evidence. In an order filed June 30, 1999, the district court, while noting the presumption of validity which attaches to special assessments, found that any special benefits conferred on the Landowners' property were a product of the paving, grating, curbing, and widening of 54th Street. However, the court ruled that because "the improvements were initiated and made primarily at the request of the owners of Certified Transmissions" and because the Landowners received no special benefits from the paving project, the special assessment was arbitrary, capricious, and therefore void.

On July 2, 1999, the Board and the City requested a new trial, which the district court denied on March 22, 2000. The Board and the City filed their notice of appeal on April 13, 2000.

## ASSIGNMENTS OF ERROR

The Board and the City bring five assignments of error, all of which assail the fact that the district court did not hold a new trial complete with the receipt of evidence and that the district court applied the wrong standard of review.

## STANDARD OF REVIEW

Consistent with their assignments of error, the Board and the City argue that the district court applied the wrong procedure for, and standard of, review to the City Council's assessment. The district court ruled that the Landowners' petition in appeal was governed by Neb. Rev. Stat. §§ 15-1201 through 15-1205 (Reissue 1997). Section 15-1205 requires the district court to hear appeals from the Board "as in equity" and to "determine anew all questions raised before the city." The district court was incorrect. These statutes are applicable only to appeals from boards of cities of the primary class, which Omaha is not. See § 15-1201. While the parties agree that Chapter 15 of the Nebraska Revised Statutes is inapplicable, they disagree as to the procedure for, and standard of, review of the City Council's special assessment.

The Board and the City maintain that the procedure for appealing a special assessment by a *metropolitan-class* city such as Omaha is not clearly set forth in the Nebraska statutes and that thus the Landowners' appeal is governed by Neb. Rev. Stat. § 25-1937 (Reissue 1995), which entitles them to a trial de novo in the district court. Section 25-1937 states in part:

> When the Legislature enacts a law providing for an appeal without providing the procedure therefor, the procedure for appeal to the district court shall be the same as for appeals from the county court to the district court in civil actions. Trial in the district court shall be de novo upon the issues made up by the pleadings in the district court.

The Board and the City argue that the district court was required to conduct a trial de novo, including a formal evidentiary hearing rather than treating the case as a petition in error proceeding. The Landowners, on the other hand, argue that review of the City's special assessment by the district court is by a petition in error. In that instance, the question is whether the

inferior tribunal, in this case the City Council, acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence. See *Luet, Inc. v. City of Omaha*, 247 Neb. 831, 530 N.W.2d 633 (1995).

The procedure for appealing a city council's special assessment to the district court, as well as the standard of review, differ according to whether the city is of the "metropolitan class" (population of over 300,000) or of the "primary class" (population over 100,000 but fewer than 300,000). See Neb. Rev. Stat. §§ 14-101 and 15-101 (Reissue 1997). Chapter 15 of the Nebraska Revised Statutes applies specifically to cities of the primary class. A final decision by a board of equalization of a city of the primary class is reviewed by the district court on appeal "as in equity and without a jury," and the district court must "determine anew all questions raised before the city. The court may reverse or affirm, wholly or partly, or may modify the order or decision brought up for review." § 15-1205.

On the other hand, appeals involving cities of the metropolitan class, only Omaha in Nebraska, are governed by Chapter 14 of the Nebraska Revised Statutes. Neb. Rev. Stat. § 14-548 (Reissue 1997) provides an aggrieved property owner the right to appeal the City's special assessment to the district court, and the appeal is "taken as specified in section 14-813." According to Neb. Rev. Stat. § 14-813 (Reissue 1997), "The proceedings of the district court shall thereafter be the same as on appeal from the county board." Appeals from county boards to district courts are governed by Neb. Rev. Stat. § 23-137 (Reissue 1997), which states that appeals "shall be entered, tried, and determined . . . in the manner provided in sections 25-1901 to 25-1937." Neb. Rev. Stat. §§ 25-1901 through 25-1908 (Reissue 1995) govern reviews on petition in error. Section 25-1901 states: "A judgment rendered or final order made by any tribunal, board, or officer exercising judicial functions and inferior in jurisdiction to the district court may be reversed, vacated, or modified by the district court . . . ." Finally, "The proceedings to obtain such reversal, vacation or modification shall be by petition entitled petition in error, filed in a court having power to make such reversal, vacation or modification, setting forth the errors complained of . . . ." § 25-1903.

■ Consequently, an appeal from a special assessment by a primary-class city is "heard in the district court as in equity and without a jury" and tried de novo on the record. *NEBCO, Inc. v. Board of Equal. of City of Lincoln*, 250 Neb. 81, 85, 547 N.W.2d 499, 502 (1996). But, an appeal from a special assessment by a metropolitan-class city is conducted by petition in error, and the review is solely of the record made before the tribunal whose action is being reviewed. *Caniglia v. City of Omaha*, 210 Neb. 404, 315 N.W.2d 241 (1982). The question for the district court upon such review is whether the inferior tribunal acted within its jurisdiction and whether its decision is supported by sufficient relevant evidence. *Luet, Inc. v. City of Omaha, supra.* Admittedly, one must "hop-scotch" among several statutes to find the procedure and standard of review. But merely because the answer is found in a series of statutes rather than in one concise statement such as § 15-1205 for cities of the primary class does not mean we are free to ignore the law or fashion our own procedure. The Board and the City allude to "many other valuable pieces of information," brief for appellants at 25, which they would have put before the court in an evidentiary hearing, but the time to do so was at the hearing before the Board. (We point out, without comment, the fact that the Board and the City made no request of the district court to hear additional evidence.)

■ Omaha is a city of the metropolitan class, and the City Council is an "inferior tribunal" which exercised judicial functions in deciding a question of fact: whether the City's grading, paving, and curbing has or will benefit the Landowners' property. See, *Bennett v. Board of Equal. of City of Lincoln*, 245 Neb. 838, 515 N.W.2d 776 (1994) (whether property which has been specially assessed has or will benefit from improvement project is question of fact); *Abboud v. Lakeview, Inc.*, 237 Neb. 326, 466 N.W.2d 442 (1991) (city council is tribunal which exercises judicial functions in determining questions of fact); *Bitter v. City of Lincoln*, 165 Neb. 201, 85 N.W.2d 302 (1957) (in error proceedings findings and conclusions of board of equalization, which acts judicially, have weight and conclusiveness of verdict of jury). We hold that appeals from special assessments to the district court by a city of the metropolitan class occur through a petition in error, which does not involve a trial de novo. While

the district court may have erroneously treated the appeal as an equity action pursuant to § 15-1205, the district court properly did not take additional evidence and, instead, based its review on the record before it. But, because there was no trial, we now turn to the question of the extent of our jurisdiction.

## JURISDICTION

It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Alycia P.*, 258 Neb. 258, 603 N.W.2d 7 (1999). After the district court had reversed the City Council's special assessment on June 30, 1999, the Board and the City filed a motion for new trial on July 2. The district court overruled the motion on March 23, 2000, and the Board and the City appealed the overruling of that motion to us on April 13. The district court based its review solely on the record from the Board and City Council hearings, and there was no new witness testimony or receipt of new evidence during the Landowners' appeal to the district court. Therefore, there was never a "trial" in district court preceding the Board and the City's appeal to this court, and as said above, nor should there have been.

To perfect an appeal to this court, one must file his or her notice of appeal within 30 days of the lower court's final order. Neb. Rev. Stat. § 25-1914 (Reissue 1995). Generally, the filing of a motion for new trial has the effect of tolling the running of the statutory time for filing an appeal from a final order of the district court. Neb. Rev. Stat. § 25-1912 (Cum. Supp. 1998); *Sinn v. City of Seward*, 3 Neb. App. 59, 523 N.W.2d 39 (1994). However, where there is no trial, a pleading entitled "Motion for New Trial" is not properly considered as a motion for a new trial, does not toll the running of the statutory time for filing an appeal from a trial court's order, and is only a "motion to reconsider." *Id.*; *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993). Because there was no trial, the Board and the City's motion for a new trial did not toll the 30 days in which they had to appeal the district court's remand of the case to the Board. The Board and the City filed their notice of appeal more than 30 days after the court's ruling on the Landowners' "petition on appeal," and therefore the Board and the City's notice of appeal

is late. In *Breeden v. Nebraska Methodist Hosp.*, 257 Neb. 371, 598 N.W.2d 441 (1999), the court said that the only pleading which tolls the time for filing an appeal is a motion for new trial as defined in Neb. Rev. Stat. § 25-1142 (Reissue 1995). But, in *Breeden*, there was a trial via summary judgment. See, also, *Woodward v. Yonker*, 1 Neb. App. 1011, 510 N.W.2d 480 (1993) (where district court acts as intermediate appellate court, filing of motion for new trial after its decision does not toll running of 30 days in which to appeal to Court of Appeals).

Here, there was no trial, and thus no motion can extend the 30 days in which to appeal to this court. The appeal was not filed within 30 days, and the motion for new trial was merely a motion for reconsideration. Consequently, there is no jurisdiction in the appellate court. See, *Breeden, supra*; *Bechtold v. Gomez*, 254 Neb. 282, 288, 576 N.W.2d 185, 190 (1998) (motion for reconsideration does not toll time for appeal, time to appeal order of disqualification of counsel had "expired" and court had "no jurisdiction to consider Gomez' arguments involving such disqualification").

Because we lack jurisdiction, we dismiss the Board and the City's appeal.

APPEAL DISMISSED.