650 N.W.2d 504 (2002)
11 Neb. App. 377
WASHINGTON COUNTY BOARD OF EQUALIZATION, Appellant,
v.
RUSHMORE BORGLUM MINISTRIES, INC., Appellee.
No. A-01-771.
Court of Appeals of Nebraska.
September 10, 2002.
*505 Edmond E. Talbot III, Washington County Attorney, Blair, for appellant.
Jim R. Titus, of Morris & Titus Law Firm, P.C., L.L.O., Lincoln, for appellee.
IRWIN, Chief Judge, and INBODY and CARLSON, Judges.
IRWIN, Chief Judge.

I. INTRODUCTION
Rushmore Borglum Ministries, Inc. (Rushmore), applied for tax-exempt status with the Washington County Board of Equalization (Board), claiming that status as a religious organization under Neb. Rev. Stat. § 77-202(d) (Cum.Supp.1998). Rushmore's application was denied by the Board. Thereafter, Rushmore appealed to the Nebraska Tax Equalization and Review Commission (the TERC). After a hearing, the TERC held that Rushmore's application should have been granted, and it reversed the determination of the Board and vacated its order. The Board appealed the decision of the TERC.
An administrative agency has the power to reconsider its decisions until the aggrieved party files an appeal or the statutory appeal period has expired. The Board reconsidered its decision beyond this timeframe and issued an order, and Rushmore appealed from this order. We find that the Board did not have jurisdiction to reconsider the matter and issue a subsequent order. As such, Rushmore did not have the power to appeal from the Board's order following its reconsideration. For the reasons stated herein, we find that Rushmore's appeal must be dismissed for lack of jurisdiction.

II. BACKGROUND
The property at issue is a residence and a partially completed garage built on approximately 10 acres located in Fort Calhoun, Nebraska. Rushmore purchased the property in 1998. The residence was built in 2000, but as of the time of the hearings, the garage was not finished. Rushmore applied for tax-exempt status in 1998 for tax year 1999. This application was granted. Rushmore then reapplied in 1999 for tax year 2000. Rushmore's 1999 application is the subject of this appeal.
On May 23, 2000, the Board denied Rushmore's application. It is undisputed that Rushmore was not given notice prior to May 23 that the Board was reviewing Rushmore's application, and as such, Rushmore was not present on May 23 when the Board denied its application. Rushmore was informed of the Board's *506 decision by letter dated May 26, 2000. In this letter, the Board notified Rushmore that its application was denied and that Rushmore had 30 days from the final order to appeal the matter to the TERC. This matter was "reconsidered" on June 27, and the Board again denied Rushmore's application. Dr. Lonnie Hofer, the minister for Rushmore, testified at the hearing on June 27 that he received the letter from the Board denying his application on May 26. The record also contains a certified mail receipt signed by Hofer's wife on May 27 indicating she received the May 26 letter. We note the record does not reflect that any written or oral motion for reconsideration was ever made by Rushmore. On July 25, Rushmore appealed the determination resulting from the June 27 proceedings of the Board to the TERC.
A hearing was held before the TERC on January 11, 2001. At this hearing, the TERC questioned whether it had subject matter jurisdiction to decide this matter. The TERC's concern involved the timeliness of the appeal. In its March 14 order, the TERC determined that it had subject matter jurisdiction and allowed the case to proceed.
The TERC held a hearing on June 6, 2001, to decide the merits of this case. In a written order, the TERC reversed the determination of the Board and vacated its order. Thereafter, the Board filed a petition on appeal with this court.

III. ASSIGNMENT OF ERROR
For its assigned errors, the Board generally contends that the TERC erred in vacating and reversing the Board's denial of Rushmore's application.

IV. ANALYSIS

1. STANDARD OF REVIEW
We review the decision of the TERC for error appearing on the record. See Neb.Rev.Stat. § 77-5019(5) (Supp.1999). When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Harrison Square v. Sarpy Cty. Bd. of Equal., 6 Neb.App. 454, 574 N.W.2d 180 (1998); In re Conservatorship of Estate of Marsh, 5 Neb.App. 899, 566 N.W.2d 783 (1997).

2. JURISDICTIONAL QUESTION
Whether a question is raised by the parties concerning jurisdiction, it is not only within the power but the duty of an appellate court to determine whether such appellate court has jurisdiction over the subject matter. State v. Schmailzl, 248 Neb. 314, 534 N.W.2d 743 (1995); State v. Grant, 9 Neb.App. 919, 623 N.W.2d 337 (2001). As such, we are compelled to address whether this appeal is properly before us.
On May 23, 2000, the Board entered its order denying Rushmore's application for an exemption for being a religious organization. On June 27, the Board conducted a hearing where it "reconsidered" Rushmore's application. In its June 27 order, the Board again denied Rushmore's application. Rushmore filed its notice of appeal to the TERC on July 25.
A hearing was held before the TERC on January 11, 2001. The TERC raised, on its own motion, the question of subject matter jurisdiction. In its order, the TERC noted that there is "`no "presumption" that the [TERC] has jurisdiction.' "See Arcadian Fertilizer v. Sarpy Cty. Bd. of Equal., 7 Neb.App. 499, 583 N.W.2d 353 (1998). After the hearing, the parties submitted briefs on the issue of jurisdiction. The parties also entered into a stipulation *507 regarding jurisdiction. In this stipulation, the parties agreed that no notice was given by the Board to Rushmore that a hearing would be held on May 23, 2000. The parties stipulated that Rushmore had notice of the June 27 hearing. The parties agreed their stipulation could be "used as evidence in determining subject matter jurisdiction." On March 14, 2001, the TERC entered an order finding it had jurisdiction and allowed the case to proceed on the merits. In so finding, the TERC stated, "[B]ased on the Stipulation and the Briefs filed by the Parties the [TERC] finds that it has subject matter jurisdiction in this appeal."
Based on the above facts, we must decide whether the Board had jurisdiction to reconsider its May 23, 2000, order on June 27, and subsequently whether the TERC had jurisdiction to hear Rushmore's appeal.
Before we decide the jurisdictional question, we note that the Board did not comply with the statute requiring Rushmore to be given at least 10 days' notice before a hearing is held. See Neb.Rev.Stat. § 77-202.02 (Cum.Supp.1998). In the parties' stipulation, the Board agreed that Rushmore was not given notice that a hearing would be held on May 23, 2000. We do not condone the actions of the Board in this opinion. The Board should have complied with § 77-202.02 and given Rushmore the proper notice. Even so, in deciding this case, we are required to adhere to the strict construction of the jurisdictional statutes. See Nebraska Dept. of Health & Human Servs. v. Struss, 261 Neb. 435, 623 N.W.2d 308 (2001).
Case law provides that an administrative agency has the power to reconsider its decisions until the "`aggrieved party files an appeal or the statutory appeal period has expired.'" City of Omaha v. Wade, 1 Neb.App. 1168, 1172, 510 N.W.2d 564, 567 (1993). This provision applies to the Board because it is an administrative agency. See Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal., 243 Neb. 351, 500 N.W.2d 520 (1993) (stating that county board of equalization is administrative agency).
To perfect an appeal to the TERC, one must file his or her notice of appeal within 30 days of the Board's final order. See Neb.Rev.Stat. § 77-1510 (Cum.Supp.2000). Case law has held that in some cases, a motion to reconsider may be treated as a motion for new trial that would toll the time for filing a notice of appeal. See, Breeden v. Nebraska Methodist Hosp., 257 Neb. 371, 598 N.W.2d 441 (1999); Neb. Rev.Stat. § 25-1912 (Supp.1999). However, the record in the instant case contains no motion to reconsider. See Jackson v. Board of Equal. of City of Omaha, 10 Neb.App. 330, 630 N.W.2d 680 (2001). Thus, the time to file an appeal was not tolled. See id.
Rushmore should have filed its notice of appeal by June 22, 2000. Rushmore did not file its notice of appeal by June 22, that is, within 30 days of the May 23 decision. The Board had jurisdiction only until that day to reconsider its decision. See City of Omaha v. Wade, supra. Therefore, the Board did not have jurisdiction to reconsider its May 23 order on June 27. Even so, the Board held a hearing and entered a decision on June 27.
The only valid order that existed was the May 23, 2000, order, and Rushmore's notice of appeal was filed on July 25, well beyond the 30-day time limit set out in § 77-1510. Therefore, the TERC did not have jurisdiction to hear Rushmore's appeal, since the appeal was untimely. Because the TERC was without jurisdiction, we likewise do not have jurisdiction *508 to decide the merits of this case. See Jackson v. Board of Equal. of City of Omaha, supra. Because Rushmore did not comply with the jurisdictional requirements, this appeal must be dismissed for lack of jurisdiction. See Creighton St. Joseph Hosp. v. Tax Eq. & Rev. Comm., 260 Neb. 905, 620 N.W.2d 90 (2000).

V. CONCLUSION
The Board did not have jurisdiction to enter its order of June 27, 2000. Rushmore did not perfect its appeal within 30 days of the Board's May 23 order, not filing its notice of appeal until July 25. Therefore, this appeal is dismissed for lack of jurisdiction.
Appeal dismissed.
CARLSON, Judge, dissenting.
I respectfully dissent from the majority's determination that we do not have jurisdiction in this matter and the conclusion that this appeal should be dismissed.
Jurisdiction.
The rationale of the majority's opinion that this court does not have jurisdiction is based on the incorrect premise that the key date in any analysis is the first Board "hearing" of May 23, 2000. The gravamen of the jurisdictional question in this case is the stipulated and agreed upon fact that Rushmore was not given notice that a hearing would be held on May 23. This notice requirement is clearly spelled out and mandated in § 77-202.02 ("county board of equalization ... after a hearing on ten days' notice to the applicant ... shall certify its decision to the applicant"). The failure to comply with this notice requirement to the taxpayer-applicant, Rushmore, violates Rushmore's due process rights.
The effect of the majority decision is to deny Rushmore a hearing. As stated, this lack of notice and a hearing to challenge Rushmore's tax assessment constitutes a denial of due process. "Procedural due process" limits the ability of the government to deprive people of interests which constitute liberty or property interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. Marshall v. Wimes, 261 Neb. 846, 626 N.W.2d 229 (2001). The central meaning of "procedural due process" is that parties whose rights are to be affected are entitled to be heard, and, in order that they may enjoy that right, they must first be notified. In re Interest of Natasha H. & Sierra H., 258 Neb. 131, 602 N.W.2d 439 (1999). The majority's result is untenable when the facts and the intent of the parties clearly dictate June 27, 2000, as the operative hearing date.
Case law provides that an administrative agency has the power to reconsider its decisions until the "`aggrieved party files an appeal or the statutory appeal period has expired.'" City of Omaha v. Wade, 1 Neb.App. 1168, 1172, 510 N.W.2d 564, 567 (1993). This provision applies to the Board because it is an administrative agency. See Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal., 243 Neb. 351, 500 N.W.2d 520 (1993) (stating that county board of equalization is administrative agency). It is clear that when the Board agreed to reconsider Rushmore's application, it implicitly vacated its May 23, 2000, order. As such, there was no order in effect and the Board retained jurisdiction to reconsider the matter on June 27 and subsequently enter its order.
To perfect an appeal to the TERC, one must file his or her notice of appeal within 30 days of the Board's final order. See § 77-1510. Rushmore filed its notice of appeal to the TERC on July 25, 2000. *509 Rushmore's appeal to the TERC was timely, and the TERC had jurisdiction to hear Rushmore's appeal. Therefore, this court had jurisdiction to hear the Board's appeal and the case should be decided on its merits.
Merits.
The TERC held a hearing on June 6, 2001, to decide the merits of this case. At the hearing, Hofer testified and offered exhibits containing information about Rushmore and its ministries. Hofer testified that he has worked for Rushmore for 23 years. Hofer stated that he has traveled for 17 years, ministering in 20 states and several countries. Hofer testified that the residence at issue was built because Rushmore needed more space to entertain guests for fundraising and ministry. Hofer stated that the garage was being built to provide a place for the ministry's van, recreational vehicle, and other equipment. The garage would also contain office space where Hofer would prepare his ministry. Hofer testified that Rushmore requires him to live in the residence and provide security for the equipment mentioned above.
Hofer provided detailed information about how the residence is used to promote Rushmore's ministry. Specifically, Hofer said that in 2000, he had about 75 people at the residence for Bible study, 15 people for counseling, and about 84 people for "evangelism and fellowship." Hofer stated that he had 140 overnight guests during 2000. These people were supporters, potential supporters, and people he was ministering to.
Hofer testified that there was no sale of alcohol on the premises. Hofer also testified that Rushmore did not discriminate on the basis of race, color, or national origin. Hofer stated that there is a mortgage on the residence, which Rushmore pays. The warranty deed entered into evidence named Rushmore as the grantee of the property that is the subject of this lawsuit. Hofer also stated that no rent is received from this property. Hofer further testified that all money received from "love offerings" or other contributions goes through the secretary-treasurer of Rushmore.
Sidney Penke, a Washington County assessor, testified regarding why she denied Rushmore's application. Penke stated, "[I]t was the fact that we had nothing to show us there was an actual affiliation with a church like we had [with] the other parsonages where we could see this." Penke testified that there was no evidence to show that the residence was used for church purposes. Penke reiterated several times that Rushmore could not be granted tax-exempt status because there was no affiliation with a particular church.
Two members of the Board testified on the Board's behalf. Both members testified that if there were a church with a congregation close to the residence, it would have made a difference as to their decisions. They also testified that the residence was used predominantly for a religious purpose.
After hearing the evidence, the TERC took the matter under advisement. In a written order, the TERC reversed the Board's determination and vacated its order. The TERC found that Rushmore "presented sufficient clear and convincing evidence to support its contention that the subject property satisfies the five-part test for exemption." The TERC concluded as a matter of law that based on the record before it, the decision of the Board to deny Rushmore's application for tax-exempt status for the tax year 2000 was unreasonable and arbitrary. Thereafter, the Board appealed.
*510 The Board's assignments of error are as follows: (1) The TERC failed to apply the proper standard of review, (2) the TERC improperly placed the burden of proof on the Board, and (3) the TERC erred in finding that the decision of the Board was unreasonable or arbitrary.
The first error addresses whether the TERC employed the proper standard of review. The Board argues that the TERC "expressly rejected the mandatory presumption" afforded to the Board. Brief for appellant at 8. The Board argues that Rushmore did not present sufficient evidence to allow the TERC to reverse the decision of the Board.
Regarding the proper standard of review, Neb.Rev.Stat. § 77-1511 (Reissue 1996) provides that the TERC
shall hear appeals and cross appeals ... as in equity and without a jury and determine anew all questions raised before the [Board] which relate to the liability of the property to assessment, or the amount thereof. The [TERC] shall affirm the action taken by the [B]oard unless evidence is adduced establishing that the action of the [B]oard was unreasonable or arbitrary....
The Nebraska Supreme Court has dealt with whether a rebuttable presumption exists regarding the decision of a board of equalization. The court held, under a predecessor to the present § 77-1511, that there is a presumption that a board of equalization has properly performed its official duties and that in making an assessment it has acted upon sufficient competent evidence to justify its action. However, the court further held that "`[t]he presumption disappears when there is competent evidence to the contrary....'" Boss Hotels Co. v. County of Hall, 183 Neb. 19, 21, 157 N.W.2d 868, 869 (1968).
In this case, the TERC determined that Rushmore presented evidence proving that the Board's denial of Rushmore's application was incorrect. Therefore, the presumption of correctness was rebutted, and the reasonableness of the Board's denial of Rushmore's application became a question of fact. The Board's allegation that the TERC ignored a rebuttable presumption of correctness is without merit. It is apparent from its written order that the TERC employed the proper standard of review. In its order, the TERC specifically concluded, as a matter of law based on the record before it, that the decision of the Board to deny Rushmore's application for tax-exempt status for the tax year 2000 was unreasonable and arbitrary.
The Board also assigns that the TERC improperly placed the burden of proof on the Board rather than Rushmore. The Board argues that from the TERC's findings of fact, it can be inferred that the TERC shifted the burden to the Board. According to the Board, the TERC improperly required the Board to "prove a disqualifying use of the property." Brief for appellant at 8.
It is well established that the burden of proving exemption from taxation is on the party claiming such exemption. Indian Hills Comm. Ch. v. County Bd. of Equal., 226 Neb. 510, 412 N.W.2d 459 (1987); United Way v. Douglas Co. Bd. of Equal., 215 Neb. 1, 337 N.W.2d 103 (1983).
A review of the TERC's order and the record shows that the TERC did not place the burden of proof on the Board. Instead, after Rushmore presented evidence rebutting the presumption that the Board's denial of Rushmore's application was correct, the TERC determined the reasonableness of the Board's evaluation based on the evidence before it. This assigned error is without merit.
*511 The Board's remaining assigned errors may be summarized as asserting that the TERC erred in determining that the Board's decision was unreasonable or arbitrary. In its argument, the Board contends that the TERC erred in finding that the residence was a parsonage. The Board also contends that the TERC ignored evidence adduced at the hearing that the use of the residence was for financial gain.
This court reviews the decision of the TERC for error appearing on the record. See § 77-5019(5). When reviewing an order for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Harrison Square v. Sarpy Cty. Bd. of Equal., 6 Neb.App. 454, 574 N.W.2d 180 (1998); In re Conservatorship of Estate of Marsh, 5 Neb.App. 899, 566 N.W.2d 783 (1997).
Section 77-202(1)(c) exempts property from taxation if the property is
owned by educational, religious, charitable, or cemetery organizations and used exclusively for educational, religious, charitable, or cemetery purposes, when such property is not (i) owned or used for financial gain or profit to either the owner or user, (ii) used for the sale of alcoholic liquors for more than twenty hours per week, or (iii) owned or used by an organization which discriminates in membership or employment based on race, color, or national origin.
In this case, the Board does not dispute that the property was not used for the sale of alcoholic liquor. Nor does the Board contend that Rushmore discriminated on the basis of race, color, or national origin. The only issues in this appeal are whether Rushmore used the property exclusively for religious purposes and whether Rushmore used the property for financial gain or profit.
The Nebraska Supreme Court has held that "exclusive use" means the primary or dominant use of property, as opposed to incidental use. Neb. Unit. Meth. Ch. v. Scotts Bluff Cty. Bd. of Equal., 243 Neb. 412, 499 N.W.2d 543 (1993). An exemption will not be lost if the property claimed to be exempt is used in an incidental manner that is not religious as long as the predominant or primary use of the property is one or more of the exempt uses. Id.
The Nebraska Supreme Court has defined religious purpose as follows:
"'Prayer is always worship. Reading the Bible and singing may be worship. * * * If these exercises of reading the Bible, joining in prayer and in the singing of hymns were performed in a church there would be no doubt of their religious character, and that character is not changed by the place of their performance.'..."
Id. at 418, 499 N.W.2d at 547-48. Additionally, the Nebraska Supreme Court has found that the tax exemption for religious purposes is not restricted to property used exclusively for public worship; rather, the exemption embraces all property primarily used for religious purposes. Id.
As set forth above, Hofer testified that the primary purpose of the residence is to entertain guests for fundraising and ministry. Hofer specifically testified regarding the amount of ministry performed at the residence. Hofer stated that the garage was being built to provide a place for the ministry's van, recreational vehicle, and other equipment. The garage would also contain office space where Hofer would prepare his ministry. Rushmore requires Hofer to live in the residence and provide security for the equipment mentioned above.
*512 With regard to the Board's contention that Rushmore used the property for financial gain, this argument is without merit. Hofer testified about the financial layout of Rushmore. He stated that all money went to Rushmore's secretary-treasurer and that Rushmore did not receive any rent for the use of the property. There was no evidence presented to suggest that Rushmore was profiting financially from the construction of the residence and garage.
Given the expertise of the members of the TERC, the TERC is authorized by Neb.Rev.Stat. § 77-5016(5) (Supp.1999) to "utilize its experience, technical competence, and specialized knowledge in the evaluation of the evidence presented to it." It is apparent that Rushmore's evidence provided a basis for the TERC's conclusion that Rushmore rebutted any presumption that the Board's decision was correct. As a result, the reasonableness of the Board's decision became a question of fact. Based upon the evidence presented, the TERC did not act arbitrarily or capriciously in determining that the decision of the Board was unreasonable and arbitrary.
The TERC also did not act arbitrarily or capriciously in granting Rushmore's application for tax exemption. The TERC's decision is supported by competent evidence and conforms to the law. These assigned errors are without merit.
As indicated earlier, I find that the Board had jurisdiction to enter its June 27, 2000, order and that the TERC had jurisdiction to hear Rushmore's appeal. On the merits, I find that the TERC applied the correct standard of review and did not place the burden of proof on the Board. Finally, I find that the TERC did not err when it reversed the Board's decision denying Rushmore's application for tax exemption. Accordingly, I would affirm.